**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MICHAEL S. LANE,

              Plaintiff,

v.

DISTRICT OF COLUMBIA,

              Defendant.

Civ. Action No. 17-01484
(EGS)

---

**MEMORANDUM OPINION**

## I.   Introduction

Plaintiff Michael Lane ("Mr. Lane") brings this action against Defendant the District of Columbia ("the District") alleging: (1) age discrimination[1] in violation of the Age Discrimination in Employment Act of 1997, ("ADEA"), 19 U.S.C. § 623(a) *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.01, *et seq.;* (2) retaliation for complaining about the discrimination when he was terminated in violation of the ADEA and DCHRA as well as 42 U.S.C. §§ 1981 and 1983; and (3) Misuse and Diversion of Government Funds. *See generally*, Am. Compl., ECF No. 1-1.

Pending before the Court is the District's Motion for Summary Judgment. *See* Def.'s Mot., ECF No. 22. The Court has

---

[1] Mr. Lane withdrew his discrimination and retaliation claims based on race. *See* Pl.'s Opp'n, ECF No. 26 n.1.

carefully considered the motion, the response and reply thereto, the applicable law, and the entire record herein. The Court **GRANTS** the District's Motion for Summary Judgment. Additionally, the Court **DISMISSES** Mr. Lane's claim of misuse and diversion of government funds.

## II.  Background

### A. Factual Background

Except where indicated, the following material facts are not in dispute. At all relevant times, Mr. Lane was over 40 years of age.[2] *See* Am. Compl., ECF No. 1-1 ¶ 7. In 2003, Mr. Lane was hired by the District of Columbia Public Schools (DCPS) as an Architect on the Education Service System (EG) pay scale at a Grade 13, Step 10. Pl.'s Summary and Response to Def.'s Statement of Undisputed Facts ("SOF"), ECF No. 26-1 ¶ 1. Mr. Lane's position was subsequently transferred from DCPS to the Office of Public Education Facilities Management ("OPEFM")[3] and he remained on the EG pay scale. *Id*. ¶¶ 2, 3.

Thereafter, effective October 1, 2011, Mr. Lane's position was transferred from OPEFM to the Department of General Services

---

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document with the exception of deposition testimony, which is to the page number of the deposition transcript.

[3]  Mr. Lane disputes this, but what he states that he remained on the DCPS payroll and pay scale and his position continued to be funded by the DCPS budget. SOF, ECF No. 26-1 ¶ 2. Accordingly, it is undisputed that Mr. Lane was transferred to OPEFM.

("DGS"), a newly created agency. *See* Agency Response to EEOC Charge ("Agency Response"), ECF No. 22-5 at 2.[4] At DGS, Mr. Lane was assigned to the DGS Capital Construction Division ("CCD"). SOF, ECF No. 26-1 ¶ 5. When he was transferred to DGS, there was no change in his pay, grade, title, and series. *Id*. ¶ 6.

Mr. Lane was a member of a collective bargaining unit, represented by the Teamsters, and the compensation of the unit was based on the EG pay scale.[5] *See* Agency Response, ECF No. 22-5 at 6. Mr. Lane's membership in this unit restricted DGS's

---

[4] Mr. Lane disputes this, but what he states is that his "function and job title were transferred to DGC, but Plaintiff and his colleagues remained on an inactive DCPS EG pay scale, while their colleagues in DGS were paid on the [Career Services ("CS")] pay scale." *Id*. That Mr. Lane remained on the EG pay scale is undisputed. Owens Dep., ECF No. 26-3 at 17:16-18 ("Employees who came from OPEFM and DCPS were on the EG pay scale.").

[5] Mr. Lane disputes this, pointing to his deposition testimony where he stated that from 2008 to 2011, while he was at OPEFM, he did not receive any cost of living adjustments. Lane Dep., ECF No. 26-2 at 63:5-13. He also points to the following evidence: (1) FY 2009-FY 2012 District of Columbia Salary Schedule for Comp Unit Exhibit 4, ECF No. 26-6 at 4-14; (2) FY 2008 – OPEM Budget v. Expenditures, Exhibit 5, ECF No. 26-6 at 21-26; (3) Mr. Lane's April 18, 2014 pay stub, Exhibit 6, ECF No. 26-6 at 28; (4) FY 2006, 2008, DCPS Non Union Educational Service Employees pay scale steps, Exhibit 7, ECF No. 26-6 at 30-31; (5) An Addendum directing DCHR to place certain bargaining unit employees on appropriate compensation units beginning October 5, 2014, Exhibit 20, ECF No. 26-9 at 13-15; and (6) A list of Capital Construction Division Vacancies from 10/1/2011-09/30/2014, Exhibit 21, ECF No. 26-9 at 18. This evidence does not rebut the fact that compensation for the bargaining unit in which Mr. Lane was a member was based on the EG pay scale.

ability to change his salary or position.[6] *See id.* On February 20, 2014, the Teamsters notified OPEFM that it disclaimed any interest in representing the collective bargaining unit. *See* Letter from Warehouse Employees Union to Dean Aqui, Office of Public Education Facilities Management ("Teamster Letter") (Feb. 20, 2014), ECF No. 22-6 at 1. As a result of this disclaimer, Mr. Lane's compensation was exclusively governed by the District Personnel Manual, which requires a competitive process to move Mr. Lane to a new pay plan.[7] *See* Agency Response, ECF No. 22-5 at 6.

Effective January 2, 2014, DGS was approved for "realignment," meaning that, with regard to Mr. Lane, his EG pay scale position would be abolished and he "would be allowed to move competitively to newly established other existing titles, series and grades" and would face no monetary loss. *See* Memorandum from DGS Interim Director to the City Administrator on the Request for Approval of Reduction-in-Force Within the Department of General Services ("RIF Memorandum") (May 11,

---

[6] Mr. Lane disputes this, asserting that "new hires into the collective bargaining unit were not put on the same EG pay scale." SOF, ECF No. 26-1 ¶ 9. However, the deposition transcript cite Mr. Lane relies on does not support his assertion. *See* Owens Dep., ECF No. 26-3 at 17.
[7] Mr. Lane disputes this, asserting that the provisions of Chapter 8 were generally applicable throughout his tenure. SOF, ECF No. 26-1 ¶ 13. However, Mr. Lane's position is consistent with his compensation being "exclusively" governed by the manual following the Union's disclaimer.

2015), ECF No. 22-8 at 1. Mr. Lane disputes that a realignment
occurred. SOF, ECF No. 26-1 ¶ 10.

DGS did not have the regulatory authority to move Mr. Lane
to the CS pay scale other than through a competitive process.
*See* Agency Response, ECF No. 22-5 at 6. Accordingly, "DGS
identified comparable positions in the new proposed structure
which would ensure that the impacted employees would not lose
jobs or face a salary loss in a realignment" and "proposed to
permit the impacted employees to move **competitively** to the newly
established or other exiting titles, series and grades in the
realigned DGS." Agency Response, ECF No. 22-5 at 3. Mr. Lane
disputes that a competitive process was required. SOF, ECF No.
26-1 ¶ 14. Mr. Lane also disputes that the jobs were comparable
because they consisted of "the same work but at a demoted
position and a depressed wage rate." SOF, ECF No. 26-1 ¶ 15.

When the realignment began, 34 employees were still on the
EG pay scale. *See* RIF Memorandum, ECF No. 22-8 at 2.
In 2014, Mr. Lane applied for a CS 13 Architect Position and he
was selected for the position. *See* Lane Dep., ECF No. 22-4 at
79:4-5. Mr. Lane declined the position because it was at a step
two whereas his EG position was at a step 10. *See id*. at 87:5-8.
The CS 13 step two position had a higher salary than Mr. Lane's
EG 13 step 10 position. *See id*. at 87:17-22. While employed at
DGS, Mr. Lane was eligible to apply for 11 positions at the CS

13 through CS 15 level.[8] *See* SOF, ECF No. 26-1 ¶ 19. Mr. Lane did
not apply for any of these positions. *See id.* ¶ 26.[9] "Of the
eleven new hires[,] eight were over the age of forty (40), and
ranged in age from 40 to 56 years old."[10] *See* Agency Response,
ECF No. 22-5 at 6. They "were given salaries commensurate with
their depth and quality of directly related experience,
education, certifications and prior salary." *Id.* at 6.

As of May 11, 2015, DGS realigned all but seven employees
from the EG pay plan to the CS pay plan. *See* RIF Memorandum, ECF
No. 22-8 at 2. Mr. Lane asserts that in 2014, the ages of the
seven employees ranged from 47 to 68. Pl.'s Opp'n, ECF No. 26 at
16. In seeking approval for a RIF to abolish these seven
positions, DGS stated:

> Although positions have been identified for
> these EG employees, they have either not
> applied for an available position or have
> applied and been selected for a position, but
> refused to accept the salary and position
> offered. Despite our repeated discussions with
> these employees to address and resolve an
> remaining issues, the employees have chosen to

---

[8] Mr. Lane disputes this, asserting that accepting such a
position would mean a demotion and forgone compensation. SOF,
ECF No. 26-1 ¶ 20. This, however, does not rebut the factual
statement.

[9] Mr. Lane disputes this, pointing to his 2014 application. SOF,
ECF No. 26-1 ¶ 26. That he applied for a position in 2014 does
not rebut the factual statement.

[10] The District also states that the persons selected for these
positions ranged in age from 41 to 81 years of age. *See* Agency
Response, ECF No. 22-5 at 5. Mr. Lane did not provide any
evidence showing the ages of the persons selected. *See generally*
SOF, ECF No. 26-1.

> maintain their status as EG employees. Their
> actions have effectively stymied DGS' ability
> to bring closure to our realignment
> implementation activities.

RIF Memorandum, ECF No. 22-8 at 2.

On June 1, 2015, Mr. Lane was informed that his separation
from District government service would be effective July 2,
2015. *See* Letter from DGS to Michael Lane ("Separation Letter")
(June 1, 2015), ECF No. 22-9 at 1. The letter further informed
him that he "ha[d] a right to priority placement consideration
through the Agency Reemployment Priority Program" ("ARPP"). *Id*.
at 2.

On June 17, 2015, Mr. Lane was informed that he had been
selected for a Project Manager position at CS 13, step 1, at an
annual salary of $76,397, a higher salary than Mr. Lane had been
earning, and that the effective start date of his appointment
was June 28, 2015. *See* Letter from DGS to Michael Lane ("Offer
Letter") (June 17, 2015), ECF No. 22-10 at 1; *see also* SOF, ECF
No. 26-1 ¶ 33. The offer letter explains that:

> This offer of employment is being extended to
> you under the Agency Reemployment Priority
> Program (ARPP) that has been established in
> the Department of General Services. The ARPP
> provides assistance to employees who will or
> have been affected by a reduction-in-force
> (RIF). The ARPP provides employees or former
> employees separated in tenure groups I and
> groups II with reemployment priority
> consideration for vacancies within the agency,
> as provided in Chapter 24 of the regulations.
> Employees are automatically entered on the

> reemployment priority list immediately after
> it has been determined that the employee is to
> be adversely affected by a reduction-in-force
> and not later than the issuance of the notice
> of reduction-in-force.

Offer Letter, ECF No. 22-10 at 1. Mr. Lane did not accept this position. *See* SOF, ECF No. 26-1 ¶ 34.

### B. Procedural History

Following the District's removal of this case from the Superior Court of the District of Columbia, the Complaint was filed in this Court on July 25, 2017. *See* Am. Compl., ECF No. 1-1. The District filed its Motion for Summary Judgment on November 25, 2019. *See* Def.'s Mot., ECF No. 22. Mr. Lane filed his Opposition Response on February 19, 2020, *see* Pl.'s Opp'n, ECF No. 26; and the District filed its Reply on March 16, 2020. *See* Def.'s Reply, ECF No. 27. The motion is ripe and ready for the Court's adjudication.

### III. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the nonmoving party must demonstrate that there is a genuine issue of material fact. *Id.* at 324. A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere conclusory allegations with no factual basis are not sufficient to overcome a motion for summary judgment. *Diaz v. Washington Metro. Area Transit Auth.*, 243 F. Supp. 3d 86, 88 (D.D.C. 2017) (quoting *Ass'n of Flight Attendants-CWA, AFL-CIO v. United States Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009)). A genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Further, in the summary judgment analysis "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## IV. Analysis

### A. Mr. Lane's Discrimination Claims Arising Out of the Failure to Convert His Position From the EG Pay Scale to the CS Pay Scale and Associated Loss of Compensation Are Time Barred

The District argues that Mr. Lane's claims regarding the District's failure to convert his position from the EG pay scale

to the CS pay scale when he was transferred from OPEFM to DGS on October 1, 2011 are time barred because he did not file a claim with the EEOC until 2016. *See* Def.'s Mot., ECF No. 22 at 12. Mr. Lane contends that the "seminal" discriminatory act occurred in 2007, when he was transferred from DCPS to OPEFM, but was not moved to the CS pay scale, and that his claims are not time barred because the Lilly Ledbetter Fair Pay Act applies to his claims. *See* Pl.'s Opp'n, ECF No. 26 at 26.

An employee must first exhaust administrative remedies with the EEOC within 180 days of the unlawful employment practice, but if the plaintiff has first instituted proceedings with a state or local agency, the period is extended to 300 days. *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2018) (Sullivan, J.). A discrete retaliatory or discriminatory act occurs on the day it happened, and each discrete act starts a new clock. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 113 (2002). The Lilly Ledbetter Fair Pay Act allows for the statute of limitations to reset with each paycheck that is the result of a discriminatory compensation decision, thereby extending the amount of time in which the plaintiff can file a complaint. *See* 42 U.S.C. § 2000e-5(e)(3)(A). For the Lilly Ledbetter Fair Pay Act to apply, Mr. Lane "must bring a claim involving discrimination in compensation and point to a discriminatory compensation decision or other practice." *Schuler*

*v. PricewaterhouseCoopers, LLP*, 595 F. 3d 370, 374 (D.C. Cir. 2010) (internal quotation marks omitted). "Discrimination in compensation means paying different wages or providing different benefits to similarly situated employees." *Id*. (internal quotation marks omitted).

With regard to Mr. Lane's transfer from DCPS to OPEFM in 2007, it is undisputed that similarly situated employees—the DCPS CCD employees who were transferred from DCPS to OPEFM—were not converted to the CS pay scale. Lane Dep., ECF No. 26-2 at 57-59. Following the transfer, the Teamsters began negotiations regarding converting the CCD employees to the CS pay scale. *See id*. at 53-54. On October 1, 2011, Mr. Lane and other CCD employees were transferred from OPEFM to DGS. *See* SOF, ECF No. 26-1 ¶ 4. In February 2014, the Teamsters disclaimed any further interest in representing this group of employees. *See* Teamsters Letter, ECF No. 22-6 at 1. In January 2014, DGS initiated a realignment to address, among other things, the 34 DGS employees still on the EG pay scale. *See* RIF Memorandum, ECF No. 26-9 at 2. As of May 11, 2015, all but seven employees had been moved from the EG pay scale to the CS pay scale. *See id*.

The undisputed facts show that the failure to automatically convert Mr. Lane from the EG pay scale to the CS pay scale did not constitute "discrimination in compensation" because Mr. Lane was not paid different wages from similarly situated employees,

specifically, the DCPS CCD employees who were transferred from DCPS to OPEFM, and then from OPEFM to DGS, and were not converted to the CS pay scale. *See Schuler,* 595 F. 3d at 374 (D.C. Cir. 2010). The Lilly Ledbetter Fair Pay Act therefore does not apply.

The discriminatory acts—the failure to convert Mr. Lane from the EG pay scale to the CS pay scale in 2007 and in 2011—occurred on the date of the transfer from DCPS to OPEFM and then on the date of the transfer from OPEFM to DGS respectively. Mr. Lane states that he contacted the Equal Employment Opportunity Commission ("EEOC") on or about January 29, 2016 and subsequently filed a claim of discrimination, which was cross-filed with the District of Columbia Office of Human Rights ("DCOHR"). Am. Compl., ECF No. 1-1 ¶ 5. Since the allegedly discriminatory acts occurred in 2007 and 2011, but Mr. Lane did not file a claim with the EEOC or with DCOHR until years later, Mr. Lane's discrimination claims based on the failure to convert his position from the EG pay scale to the CS pay scale and associated loss of compensation are time barred.

**B. Mr. Lane Has Failed to Produce Sufficient Evidence From Which a Reasonable Jury Could Find that the District's Stated Reasons For Allegedly Demoting Him and Then Terminating Him Were Pretext for Discrimination Based on Age**

### 1. Legal Standards

Under the ADEA, it is unlawful for an employer to:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a)(1)-(3).

The DCHRA prohibits certain discriminatory practices "[b]y an employer," making it unlawful for an employer to "fail or refuse to hire, or to discharge, any individual; or otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment" based upon several protected categories including the person's age. D.C. Code § 2-1402.11(a)(1). When construing provisions of the D.C. Code—including the DCHRA—this Circuit "defer[s] to the District of Columbia Court of Appeals on questions of statutory interpretation." *United States v. Edmond,* 924 F.2d 261, 264 (D.C.Cir. 1991). District of Columbia courts look to cases

construing Title VII in construing the DCHRA, *see Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C.1993); as '[t]he anti-discrimination provisions of both statutes are substantially similar, *id.* (citation omitted). Accordingly, the *McDonnell-Douglas* burden-shifting framework governs the analysis. *Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012).

To establish a *prima facie* case of discrimination, the plaintiff must show: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the circumstances gave rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002), *see also Kumar v. Dist' of Columbia Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011) (same).

Discrimination and retaliation claims are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). The Court of Appeals for the District of Columbia Circuit has instructed that if a plaintiff establishes a prima facie case,

> the burden shifts to the employer to identify the legitimate, nondiscriminatory or non-retaliatory reason on which it relied in taking the complained-of action. *Holcomb v. Powell,* 433 F.3d 889, 896 (D.C. Cir. 2006). Assuming the employer proffers such a reason, the "central question" at summary judgment becomes whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or nonretaliatory reason

> was not the actual reason and that the
> employer intentionally discriminated or
> retaliated against the employee." *Allen v.
> Johnson,* 795 F.3d 34, 39, No. 13-5170, 2015 WL
> 4489510, at *3 (D.C. Cir. July 24, 2015)
> (brackets omitted) (quoting *Brady,* 520 F.3d at
> 494); *see also Hamilton,* 666 F.3d at 1351.
>
> A plaintiff may support an inference that
> the employer's stated reasons were pretextual,
> and the real reasons were prohibited
> discrimination or retaliation, by citing the
> employer's better treatment of similarly
> situated employees outside the plaintiff's
> protected group, its inconsistent or dishonest
> explanations, its deviation from established
> procedures or criteria, or the employer's
> pattern of poor treatment of other employees
> in the same protected group as the plaintiff,
> or other relevant evidence that a jury could
> reasonably conclude evinces an illicit motive.

*Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). The

Court may not "second-guess an employer's personnel decision

absent demonstrably discriminatory motive." *Fischbach v.

District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C.

Cir. 1996) (internal quotation marks and citation omitted).

"Once the employer has articulated a non-discriminatory

explanation for its action, as did the [employer] here, the

issue is not the correctness or desirability of [the] reasons

offered . . . [but] whether the employer honestly believes the

reasons it offers." *Id*. An inference of pretext could be

appropriate where "the employer made an error too obvious to be

unintentional" because in such a situation, "perhaps [the

employer] had an unlawful motive for doing so." *Id*.

15

### 2. Analysis

Mr. Lane claims that he was discriminated against based on his age when he was allegedly demoted and then ultimately terminated. *See* Am. Compl., ECF No. 1-1 ¶ 58.

The District asserts that its legitimate, non-discriminatory reason for eliminating Mr. Lane's position through a RIF was because of adverse impact "the defunct EG pay scale was having on the agency's realignment." Def.'s Mot., ECF No. 22 at 2. "Being both reasonable and non-discriminatory," *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1182 (D.C. Cir. 1996); Mr. Lane must now "'produce[] sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [or nonretaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee.'" *Allen v. Johnson,* 795 F.3d 34, 39 (D.C. Cir. 2015) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

Mr. Lane asserts that after the Teamsters disavowed representation, seven employees remained on the EG pay scale, half of whom were over age 60. *See* Pl.'s Opp'n, ECF No. 26 at 16. Mr. Lane argues that the there was no requirement for competitive bidding to transfer employees to the CS pay scale. See SOF, ECF No. 26-1 ¶ 14. To support his argument, Mr. Lane makes a number of assertions and points to evidence he contends

supports his position. First, Mr. Lane asserts that many
employees were transferred without competitive bidding. *Id.* at
17. However, the evidence he points to—the deposition of Latrena
Owens, who was certified as the Rule 30(b)(6) deponent to speak
on behalf of the District—does not support his assertion. *See*
Owens Dep., ECF No. 26-3 at 7:3-10. Rather, Ms. Owens quoted the
language in the RIF Memorandum stating that all but seven of the
34 employees transferred from OPEFM to DGS were transitioned to
CS positions in the realignment. *See* Owens Dep., ECF No. 26-3 at
28:16-19. Second, Mr. Lane points to his own deposition
testimony. *See* Lane Dep., ECF No. 26-2 at 105. The cite does not
support this assertion, but even if it did, his own self-serving
assertions do not give rise to a triable issue of fact. *Toomer*
*v. Mattis*, 266 F. Supp. 2d 184, 200 (D.D.C. 2017) (Sullivan,
J.). Third, Mr. Lane points to an October 8, 2013 DGS
realignment request. *See* Memorandum From DGS Director to City
Administrator, Request for Approval of Realignment within the
Department of General Services, (Oct. 8, 2013), ECF No. 26-8 at
20. However, the Memorandum states the opposite of what Mr. Lane
contends: "[i]n order to appropriately place the EG employees
within the career service, employees will be selected for
positions in the new structure through competitive means." *Id*.
Fourth, Mr. Lane points to the October 1, 2008 through September
2012 Teamsters Collective Bargaining Proposal which, among other

things, proposed the promotion of EG professionals to CS positions at current grade and step effective FY 2009. *See* Union Proposal for a Collective Bargaining Agreement, ECF No. 26-6 at 57. However, Mr. Lane does not point to any evidence indicating that this proposal was adopted. Finally, Mr. Lane argues that the District was wrong to interpret the applicable regulations to require competitive bidding to move the EG pay scale employees to the CS pay scale. *See* Pl.'s Opp'n, ECF No. 26 at 17-18.

Mr. Lane has provided no evidence that calls into question that the District honestly believed that it needed to eliminate the EG pay scale positions so that it could complete its realignment and that employees could only be moved from the EG pay scale to the CS pay scale through a competitive process. *See Fischbach*, 86 F.3d at 1183. None of the evidence he points to supports his assertion that a competitive process was not required to transfer from the EG pay scale to the CS pay scale. And his opinion that the District was wrong in how it interpreted the applicable regulations does not call into questions that the District honestly believed what the regulations required.

Mr. Lane would have the Court infer discriminatory intent because the District "articulate[d] no legitimate reason to demote and remove ranking steps from Mr. Lane related to his job skills or performance" because the EG pay scale and CS pay scale job descriptions are nearly identical. Pl.'s Opp'n, ECF No. 26 at 19. Even if the job descriptions are nearly identical, it is undisputed that DGS needed to move the remaining employees from a defunct pay scale to the CS pay scale. While it is undisputed that CS pay scale position was at a lower grade but higher salary than the EG pay scale position, Mr. Lane has provided no support for his position that a lower grade on a different pay scale at a higher salary constitutes a demotion.

Further evidence of discriminatory intent, according to Mr. Lane, is that new hires on the CS pay scale "were given market-rate salaries while the same was denied to [him] and his colleagues. They were also given COLA increases and promotion opportunities that were denied to [him]." SOF, ECF No. 26-1 ¶ 25. Mr. Lane also contends that the new hires had less experience and were younger than him; some of whom earned more money than he did. *See* Pl.'s Opp'n, ECF No. 26 at 20 (citing Exhibits 20, 21, 22). However, Mr. Lane has provided no evidence to support these assertions. Exhibit 20 is an Addendum directing DCHR to place certain bargaining unit employees on appropriate compensation units beginning October 5, 2014. The Addendum

provides the name and position of a list of employees, indicates their grade, step and salary, with a hand-written notation of "New Hire" next to some employees. *See* Exhibit 20, ECF No. 26-9 at 13-15. Exhibit 21 is a list of CCD Vacancies from 10/1/2011-09/30/2014. *See* Exhibit 21, ECF No. 26-9 at 18. Exhibit 22 is a June 13, 2013 "Frequently Asked Questions" regarding Pay Increase for District Government Employees. See Exhibit 22, ECF No. 26-9 at 20-22. None of this evidence supports Mr. Lane's assertions that the new hires on the CS pay scale were given market rate salaries that were denied to him and that they had less experience and were younger than Mr. Lane. Furthermore, it is undisputed that the CS pay scale positions Mr. Lane was offered were at a higher salary than his EG pay scale position.

Mr. Lane has failed to present evidence from which "a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one." *Walker*, 798 F.3d at 1093. Accordingly, the District's Motion for Summary Judgment as to Mr. Lane's discrimination claim is **GRANTED**.

**C. Mr. Lane has Failed to Produce Sufficient Evidence From Which a Reasonable Jury Could Find that the District's Stated Reasons for Terminating Him Were Pretext for Retaliation For Having Engaged in Protected Activity**

### 1. Legal Standards

"To prove retaliation [under the ADEA], the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). "Under the DCHRA, it an unlawful discriminatory practice for an employer to retaliate against a person on account of that person's opposition to any practice made unlawful by the DCHRA." *Howard University v. Green*, 652 A.2d 41, 45 (D.C. 1994). Consistent with the *McDonnell-Douglas* burden-shifting framework, once the defendant "assert[s] legitimate, nondiscriminatory reasons for [its actions]," the plaintiff must "produce sufficient evidence that would discredit those reasons and show that the actions were retaliatory." *Baloch*, 550 F.3d at 1200 (citations omitted.)

As with a discrimination claim, the Court may not "second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal quotation marks and citation omitted). "Once the employer has articulated a non-discriminatory explanation for its action, as

did the [employer] here, the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes the reasons it offers." *Id.* An inference of pretext could be appropriate where "the employer made an error too obvious to be unintentional" because in such a situation, "perhaps [the employer] had an unlawful motive for doing so." *Id.*

### 2. Analysis

Mr. Lane alleges that he was retaliated against for having engaged in protected activity when his position was eliminated through an allegedly illegal RIF. *See* Am. Compl., ECF No. 1-1 ¶ 21. The District responds that it had a legitimate, non-retaliatory reason for the RIF. Def.'s Mot., ECF No. 22 at 20-21. Specifically, "having seven employees (including [Mr. Lane]) remaining on the EG pay scale presented an impediment to DGS's reorganization and realignment." *Id.* at 21. Accordingly, DGS proposed, and the City Administrator and Interim Director of Human Resources approved, a RIF to eliminate these positions.[11]

---

[11] While the District argues that Mr. Lane made not made out a *prima facie* case because he has not demonstrated that the persons who approved the RIF knew about his protected activity, *see* Def.'s Mot., ECF No. 22 at 20; whether or not he has made out a prima facie case is not relevant at this point because the District has "asserted a legitimate, non-discriminatory reason for" terminating Mr. Lane. Accordingly, the Court need not examine whether Mr. Lane made out a prima facie case of retaliation as it is "no longer relevant." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).

"Being both reasonable and non-discriminatory," *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1182 (D.C. Cir. 1996); Mr. Lane must now "'produce[] sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or nonretaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee.'" *Allen,* 795 F.3d at 39.

Mr. Lane argues that the RIF eliminating the positions was a "ruse" because "[t]he work did not go away. Rather[,] the employees were notified of termination . . . and then notified of being offered a new lower level position on the CS pay scale." Pl.'s Opp'n, ECF No. 26 at 24. He also claims that "neither [he], nor any of his colleagues actually 'competitively bid' for the positions they were offered on rehire," and that this demonstrates that if the District could terminate him and then offer him a CS pay scale position, as occurred here, "it **_always_** had the ability to do so." *Id.*

In support of his arguments, Mr. Lane relies on the testimony of Ms. Owens, who testified that DGS received "permission to RIF [the seven employees]. However, the positions were posted simultaneously so the people could apply for the positions, and while [they] may have been RIF'd, they still did not miss any money because if [they] applied for [their] job and accepted it, [they] could just come back to work." *Id.* at 122:7-

13. Ms. Owens further testified that DGS "needed [the seven employees] to come into the larger alignment." *Id*. at 122:18-19. In response to whether what occurred was really a RIF since the work still needed to be done, Ms. Owens testified that "it was really a realignment, and it would have been a reduction in force based just upon the EG positions." *Id*. at 123:4-7.

Here, Mr. Lane would have the Court infer that the District's proffered reasons are pretextual because although the positions on the EG pay scale were eliminated, but the work still needed to be done, the elimination of the positions was a pretext for retaliating against him for having engaged in protected activity. However, Mr. Lane has provided no evidence that calls into question that the District honestly believed that it needed to eliminate the EG pay scale positions so that it could complete its realignment. *See Fischbach*, 86 F.3d at 1183. And while Mr. Lane disputes that a realignment occurred, he has provided no evidence that calls into question that the District honestly believed that it was engaging in a realignment. *See id*. The undisputed evidence shows that the realignment resulted in the elimination of the EG positions and the creation of comparable CS positions.

Mr. Lane would also have the Court infer that because "neither [he], nor any of his colleagues actually 'competitively bid' for the positions they were offered on rehire," Pl.'s

Opp'n, ECF No. 26 at 24; the elimination of the positions was
pretext for retaliating against him for having engaged in
protected activity. However, the Separation Letter informed Mr.
Lane that he "ha[d] a right to priority placement consideration
through the [ARPP]," Separation Letter, ECF No. 22-9 at 2; and
the Offer Letter informed him that he had been "automatically
entered on the reemployment priority list," Offer Letter, ECF
No. 22-10 at 1. Mr. Lane has provided no evidence that calls
into question that the District honestly believed he was
entitled to be offered this position through the AARP. *See*
*Fischbach*, 86 F.3d at 1183.

Finally, Mr. Lane would have the Court infer that because
he was offered a position on the CS pay scale at a higher salary
but lower grade than his EG pay scale grade, this demonstrates
pretext for retaliating against him for having engaged in
protected activity. The District has explained that it needed to
eliminate the EG pay scale positions so that it could complete
the implementation of the realignment. RIF Memorandum, ECF No.
22-8 at 8. Mr. Lane has provided no evidence that calls into
question that the District honestly believed that it needed to
eliminate the remaining seven EG pay scale positions to complete
its realignment. *Fischbach*, 86 F.3d at 1183.

Mr. Lane has failed to present evidence from which "a
reasonable jury could not only disbelieve the employer's

reasons, but conclude that the real reason the employer took a challenged action was a prohibited one." *Walker*, 798 F.3d at 1093. Accordingly, the District's Motion for Summary Judgment as to Mr. Lane's retaliation claim is **GRANTED**.

### D. Mr. Lane's § 1981 and § 1983 Claims

The District did not move for summary judgment on Mr. Lane's claims that he was retaliated against in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983, explaining in its Reply brief that it inadvertently failed to do so. *See* Reply, ECF No. 27 at 5. However, the precedent in this Circuit is that courts should not address arguments raised for the first time in a reply brief, and the Court declines to do so here. *See, e.g.*, *McBride v. Merrell Dow & Pharm.,* 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief ... is not only unfair to [a defendant], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)); *Conservation Force v. Salazar,* 916 F. Supp. 2d 15, 22 (D.D.C. 2013), *aff'd* 699 F.3d 538 (D.C. Cir. 2012) (forfeiting an argument made for the first time in a reply brief); *see also Jones v. Mukasey,* 565 F. Supp. 2d 68, 81 (D.D.C. 2008) (holding that D.C. precedent consistently submits that courts should not address arguments raised for the first time in a party's reply). Accordingly, the parties will be ordered to file, by no later than 14 days

following the entry of this Memorandum Opinion and accompanying Order, a Joint Status Report with recommendations for further proceedings with regard to Mr. Lane's remaining retaliation claims in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

### E. Mr. Lane's Claim for Misuse of Government Funds Is Dismissed

In Count IV, Mr. Lane alleges misuse and diversion of government funds, seeking an order from the Court requiring the District "to restore funds authorized for [his] position in the budgets for fiscal years 2013-2016," and enjoining the District "from terminating jobs which would have otherwise been properly funded and preserved except for its illegal reallocation of said funds." Am. Compl., ECF No. 101 ¶ 87. The District seeks dismissal of this claim, arguing that Mr. Lane cannot maintain a claim against the District for misuse and diversion of government funds because there is no private cause of action for alleged misuse and diversion of government funds in the civil context. *See* Def.'s Mot., ECF No. 22 at 21.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks omitted). Despite this liberal pleading standard, to survive a

motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

In support of his claim, Mr. Lane points to two cases which affirm the existence of judicial review of certain agency action and one case which finds it precluded. In *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, (D.C. 1991), the District of Columbia Court of Appeals ("DCCA") held that although the D.C. Humans Rights Act ("HRA") does not explicitly provide for judicial review of Office of Human Rights ("OHR") findings, an OHR determination that there was no probable cause to believe that the HRA had not been violated was subject to judicial review. *Id.* at 399-99. In *District of Columbia v. Reid*, 104 A.3d 859 (2014), the DCCA held that the Homeless Services Reform Act ("HRSA") entitled homeless families "the right to sue to obtain apartment-style shelter." *Id.* at 874. In *People's Counsel of Dist. of Columbia v. Public Service Commission of the District of Columbia*, 474 A.2d 1275 (D.C. 1984), however, the

Court held that judicial review of the Public Service Commission's denial of declaratory relief was available. *See id.* at 1276.

In each of these cases, the determination of whether judicial review was available depended upon the particular statutory provision at issue. Here, Mr. Lane has not indicated the statutory provision(s) upon which his claim rests. *See generally* Am. Compl., ECF No. 1-1; Pl.'s Opp'n, ECF No. 26. Accordingly, Mr. Lane's claim for misuse of government funds is **DISMISSED.**

## V.  Conclusion

Drawing every justifiable inference in Mr. Lane's favor, as the Court must, it finds no basis upon which a reasonable factfinder could conclude the District discriminated against Mr. Lane based on his age when it terminated him, or that it retaliated against him for taking part in a protected activity when it terminated him. Accordingly, the District's Motion for Summary Judgment is **GRANTED.** Additionally, Mr. Lane's claim for misuse of government funds is **DISMISSED.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**           United States District Judge**
**           August 31, 2021**